# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUWARD M. LANGFORD, | 1:05cv01271 AWI DLB |
| | SCHEDULING ORDER (Fed.R.Civ.P 16) |
| Plaintiff(s), | Discovery Deadline: October 31, 2006 |
| v. | Initial Disclosures: February 28, 2006 |
| AMERITANX, INC., et al., | Non-Dispositive Motion Deadlines:<br>   Filing: November 18, 2006<br>   Hearing: December 1, 2006 |
| Defendant(s). | Dispositive Motion Deadlines:<br>   Filing: January 5, 2007<br>   Hearing: February 5, 2007 |
| | Pre-Trial Conference:<br>   March 9, 2007, at 8:30 a.m.<br>   Courtroom 2 |
| | Trial:  April 24, 2007, at 9:00 a.m.<br>   Courtroom 2<br>   CT: 4 to 5 days |

**I.    Date of Scheduling Conference**

January 31, 2006.

**II.   Appearances of Counsel**

James C. Holland appeared on behalf of Plaintiff.

Shannon M. Traynor and Michael Wilcox appeared on behalf of Defendants.

1

### III. The Pleadings

    A. Summary of the Pleadings

**Plaintiff's Contentions**

This controversy arises from a contractual relationship between the parties, who both bid for the purchase of surplus used compressed gas cylinders offered for sale by the Defense Re-Utilization Military Organization ("DRMO"). The successful bidder would be awarded the DRMO contract, and pursuant to the customary terms of the contract, would be required to accept from the DRMO not only the specific number of cylinders put up for sale by bid, but also such additional cylinders as DRMO determined, up to a maximum of 50% more than the number of cylinders included in the original bid-offer.

The Complaint alleges four counts arising out of the previous relationship between the parties. The first count is for breach of contract for requirements; the second for breach of contract with regard to work performed by plaintiff for defendants, as well as a common count for money owed plaintiff for performance under the contract. The third count is for breach of contract and conversion of some 320 gas cylinders marked for delivery to one of plaintiff's customers, and the fourth count is for breach of contract and deceit, conversion, interference with contract and with prospective business advantage arising generally from defendants' stealing plaintiff's customer lists and customers.

**First Count**

The first count alleges the following circumstances. Plaintiff and defendants both bid on a contract to purchase surplus used oxygen cylinders generated from a Richmond Virginia military facility offered for sale by DRMO. The DRMO contract was to sell used cylinders, including 15,000 used ICC-1800 (200 cu.ft.) oxygen cylinders per year over the two-year life of the contract, for a total of 30,000. Plaintiff was the first-place (highest) bidder for the DRMO oxygen cylinder contract and defendants were the second-place bidder.

1       Defendants offered to plaintiff, that if plaintiff withdrew his bid, then
2  defendants would sell to plaintiff all ICC-1800 (200 cu. ft.) oxygen cylinders, all of such as
3  plaintiff required and at a set price of $20.00 per cylinder.
4       Plaintiff accepted defendants' offer by withdrawing his bid on the DRMO
5  contract for oxygen cylinders.
6       Defendants have breached said agreement by failing and refusing to fulfill
7  their contractual obligation to sell to plaintiff, at $20.00 per cylinder, all of the ICC-1800
8  cylinders that plaintiff's business reasonably required, up to a maximum of 45,000 of such
9  cylinders over the two-year life of the DRMO contract.  After selling plaintiff 3446 cylinders
10 pursuant to the terms of their agreement, defendants failed and refused to sell any further
11 cylinders to plaintiff.
12      The market price for used ICC-1800 oxygen cylinders at the time plaintiff
13 accepted defendants' offer was $30.00; used ICC-1800 cylinders are now worth about $40.00 on
14 the open market.
15      As a direct, proximate and foreseeable result of defendants' breach of
16 contract, plaintiff has suffered damages in the amount of at least $115,540.00 (15,000 total
17 minimum cylinders DRMO contract year one (minus) 3446 cylinders defendants did sell to
18 plaintiff = 11,554 cylinders x $10 profit per cylinder = $115,540.00).
19 **Second Count**
20      On or about July 22, 2004, defendants requested, and plaintiff agreed, to
21 record the serial numbers of, and load and arrange for shipment to defendants in Ohio, a
22 substantial number of surplus military cylinders stockpiled in Richmond, Virginia, for an agreed-
23 upon price of $3.00 per cylinder.
24      Defendants knew at the time they made this request of plaintiff that
25 plaintiff resided in California and that plaintiff would be required to travel to the U.S. military

3

1  facility at Richmond, Virginia where the cylinders were stockpiled to accomplish the agreed-
2  upon work.
3          The parties further agreed that defendants would pay the $3.00 per
4  cylinder price to plaintiff, in the form of a credit against the plaintiff's purchases of cylinders
5  from defendants, that defendants would sell to plaintiff at a price of $20.00 per cylinder.
6          Plaintiff fully performed all obligations and duties owed to defendants
7  under this contract by recording the serial numbers, and loading and shipping the 18,320
8  cylinders produced by the DRMO contracting sales officer, except for the last 3760 cylinders that
9  defendants refused to allow and intentionally blocked and prevented plaintiff from completing.
10         During the course of plaintiff's work under this contract, defendants
11 several times interfered with and caused the stoppage of plaintiff's performance of his
12 contractual duties.  On two such occasions, plaintiff and a helper traveled from Richmond,
13 Virginia where their work was ongoing, to defendants' facility in Greenfield, Ohio, and
14 performed days' worth of labor in clearing the obstacles defendants had placed or allowed to be
15 placed to plaintiff's timely performance of his contractual duties.
16         On yet another occasion, defendants intentionally hindered and blocked
17 plaintiff's performance of his contractual duties, such that plaintiff and his helper were caused to
18 sit idle for 29 days in their travel trailer at the Richmond, Virginia military facility.
19         Defendants have refused to pay plaintiff the money owed for his
20 performance under the terms of the contract in the amount of $54,960 (minus) $2,368.00 credit
21 for use of defendants' forklift = $52,592.00.
22         As a further direct, foreseeable, and proximate result of defendants'
23 intentional interferences with plaintiff's contractual performance, defendants caused plaintiff to
24 incur further monetary losses in the amount of $5,616.72.
25         When defendants were notified that plaintiff was traveling from
26 Richmond, Virginia to defendants' Greenfield, Ohio facility, defendants requested that plaintiff
27
28         4

purchase and deliver an air conditioner to defendants. Plaintiff purchased an air conditioner as requested. Defendants accepted the air conditioner, but have not reimbursed plaintiff for the $148.00 cost of the purchase made at their special request. Defendants therefore owe plaintiff $148.00 for the cost plaintiff incurred in purchasing the air conditioner for defendants.

**Third Count**

During the course of plaintiff's performance of his contractual obligations, to wit., purchasing cylinders from defendants, plaintiff had inspected and prepared for delivery to a downstream customer (Fire King), a shipment of 320 cylinders.

Defendants intentionally substituted a number of the useable 320 cylinders that plaintiff had prepared and marked for delivery to Fire King, with rejects (unuseable cylinders), taking and keeping the useable cylinders they removed from the shipment for themselves.

As a direct, foreseeable and proximate result of defendants' aforesaid wrongful misconduct, Fire King duly rejected a number of the cylinders that were delivered, and refused to pay plaintiff $1,890.00 of the total invoice.

Thus, as a direct, foreseeable and proximate result of the intentional misconduct of defendants, plaintiff has suffered monetary losses of $1,890.00.

Because defendants committed their wrongful misconduct deceitfully, intentionally and maliciously, and for the purpose of profiting themselves at plaintiff's expense, defendants are liable to plaintiff for exemplary damages in an amount sufficient to punish them for their despicable misconduct.

**Fourth Count**

During the course of the performance of their respective contractual obligations, defendants demanded and insisted that shipments of cylinders to plaintiff's downstream customers be made from defendants' Greenfield, Ohio facility, and that the accompanying purchase orders issue directly from defendants. By so demanding and insisting,

5

defendants forced plaintiff to divulge to them the identities and contact information of his downstream customers.  Thereby, and by virtue of the trust and confidence that defendants had induced plaintiff to have of them, defendants owed to plaintiff the duty not to divulge, and not to take, the valuable, proprietary information of the identities of plaintiff's downstream customers.  Further, when defendants invoiced directly plaintiff's downstream customers at the full $30.00 per cylinder price, defendants would owe to plaintiff, his $10.00 per cylinder profit.

Defendants thereafter began to sell cylinders to plaintiff's downstream customers without paying the $10.00 per cylinder profit to plaintiff and, so far as plaintiff knows, continue to do so.  Defendants have essentially stolen plaintiff's valuable customer list, interceded between plaintiff and his customers that he had cultivated and maintained over the course of more than 20 years in business, and have used plaintiff's proprietary information for their own profit, to plaintiff's direct, proximate, ongoing and continuing damage and loss.

Defendants further insisted that they bill plaintiff's downstream customers directly, mandating thereby that plaintiff share his proprietary customer information, which theretofore he had taken reasonable steps to maintain as secret.  Plaintiff shared this information with defendants, trusting based upon defendants' actions and conduct that they would maintain and honor plaintiff's customer information as a property belonging to plaintiff.  By thereafter using this information for their own benefit and contrary to that of plaintiff, against his will and initially without his knowledge, and by intentionally interceding between plaintiff and his existing downstream customers, interfered with plaintiff's existing contractual relationships and with his expected continuing economic relationships with, his downstream customers, causing economic loss and damage to plaintiff.

**Defendants Contentions**:

**As to Plaintiff' First Cause of Action:**

The Defendant contends that Duward Langford was not a bidder on the July 15, 2004 "DRMO" contract for the purchase of used compressed gas cylinders.  Rather, an

individual by the name of Norm Johnson was the highest bidder on the sealed bid contract, who had the winning bid of $18.19 per cylinder.  The Defendant was the second highest bidder, whose sealed bid contained an offer to purchase the cylinders at a rate of $5.99 per cylinder. After the bids were opened and the contract awarded to Norm Johnson, Mr. Johnson withdrew his winning bid.  There was no agreement between Norm Johnson and the Defendant to withdraw the bid, or to sell cylinders to each other.

Further, the Defendant contends that government regulations do not permit collusion between competing bidders.

There was no agreement or contract from the Defendant to sell all cylinders to the Plaintiff, whether or not his business reasonably required them. Defendant did agree to allow the Plaintiff to sell the Defendant's cylinders, in semi-tractor trailer loads of cylinders, consisting of approximately 300 cylinders, with a minimum sale price of $30.00 per cylinder.  The Defendant agreed to a minimum of 4600 cylinders via written agreement. The Plaintiff was to keep $10.00 per cylinder, which included his recording fee of $2.00 per cylinder, and remit the $20.00 balance to the Defendant. This agreement was per load, and contained no continuing obligation to honor requests for further loads, after the 4600 minimum was reached. Pursuant to this arrangement, Plaintiff did sell 3446 cylinders the Defendant's, for which the Plaintiff is indebted to the Defendant in the amount of roughly $18,000.00.  The Plaintiff breached the contract by failing to remit the amount due when requested.

**As to Plaintiff's Second Cause of Action**

On or about August 10, 2004, the Plaintiff offered and Defendant accepted Plaintiff's offer, to record the serial numbers of and load and arrange for shipment to the Defendants in Ohio, a number of surplus military cylinders stockpiled in Richmond, Virginia for an agreed upon price of $2.00 per cylinder.

The Plaintiff had, prior to August 10, 2004, traveled to Richmond, VA in anticipation of being the winning bidder on the second DRMO contract.  The Plaintiff brought,

as evidence of his expectations, a certified check made payable to the DRMO in the amount of $10,000.00.  Neither Plaintiff nor Defendant was the highest bidder on the August sale. However, Defendant was in Richmond recording his previously won cylinders when Plaintiff offered his services, as the Plaintiff had brought 2 assistants to Virginia with him.  The Defendant accepted the Plaintiff's offer of services, and also entered into an agreement for the sale of surplus cylinders.  See subparagraph 1), Defendant's contentions, supra.

        Plaintiff fully performed his obligations by recording, loading and shipping 14,560 cylinders to the Defendant's place of business in Ohio.  The remaining 3760 cylinders were recorded by the Plaintiff, and shipped by the Defendant, because the Plaintiff wanted to be home by Thanksgiving.

        Operating under no governmental deadline, the Defendant refused to accept shipment of some of the cylinders in Ohio when the maximum capacity of storage had been reached and he could not certify compliance with the restrictions of the Department of Transportation and the Environmental Protection Agency.  The Plaintiff traveled to Ohio to assist in orchestrating the unloading of 18 semi-tractor trailers that were standing by at the Defendant's place of business.

        Plaintiff received a credit against the amount due and owing to the Defendant ($44,463.75)in the amount of $29,736.00.

        Plaintiff was traveling to Ohio during the month of August 2004, and Plaintiff and his assistants requested a place to spend the night from Defendant.  Defendant offered at no cost, the use of a loft apartment at his place of business.  However, he advised that Plaintiff and his assistant may need an air conditioner to make the facilities more amenable. Plaintiff purchased of his own accord, an air conditioner for his and his assistants' use.  Plaintiff failed to take the air conditioner when leaving Defendant's facility.

**As to Plaintiff's Third Cause of Action**

Plaintiff shipped 320 cylinders to Fire King, who in turn rejected shipment of 60 cylinders. The cylinders were sold "as is" from the 15,000 cylinder stored at Defendant's facility. Defendant had no participation in the selection of the cylinders shipped by Plaintiff.

**As to Plaintiff's Fourth Cause of Action**

Defendant advertises his business in national magazines. Plaintiff and Defendant are both engaged in an exclusive, limited industry, where there is a recurrent stream of clients and customers dealing in the sale and purchase of used compressed gas cylinders. Defendant's customer list is, and always has been comprised of a number of companies claimed to be proprietary to Plaintiff. Plaintiff had no proprietary client list that included any names of individuals or businesses unknown to Defendant but for that relationship.

    B.    Orders Re Amendment of Pleadings

Amendment of the complaint is possible, because of a fluid situation with future increases in the DRMO mandated contractual increases.

Any amendment to the pleadings shall be filed on or before August 15, 2006.

**IV.    Factual Summary**

    A.    Admitted Facts which are deemed proven without further proceedings:

        1.    That the parties had a previous working relationship.

        2.    That the parties were both in the business of purchasing used compressed gas cylinders from the DRMO.

        3.    That the government contract called for a bid to purchase 15,000 used compressed gas cylinders, with a two year term, consisting of a maximum of 45,000 cylinders.

        4.    That Defendant was the winning bidder after the person who was the highest bidder withdrew his bid.

        5.      That Plaintiff recorded the serial numbers of, and shipped a number of cylinders to, Defendant.

    B.    Contested Facts:

        1.      All facts other than those listed above are contested.

## V. Legal Issues

    A.    Uncontested:

        1.      Jurisdiction

        2.      The Federal Rules of Civil Procedure and of Evidence apply to this case.

    B.    Contested:

        1.      Defendants intend to move for a change of venue. Defendants shall file their motion on or before February 10, 2006.

        2.      Whether Plaintiff can establish a prima facie case as alleged in the four counts cited supra.

        3.      The nature and amount of Plaintiffs' damages, if any

## VI. Discovery Plan and Cut-Off Date

The parties are ordered to exchange the initial disclosures required by Fed .R. Civ. P. 26(a)(1) on or before February 28, 2006.

The parties are ordered to complete all discovery on or before October 31, 2006.

The parties are directed to disclose all expert witnesses, in writing, on or before September 29, 2006. The written designation of experts shall **be made pursuant to Fed. R. Civ. P. Rule 26(a)(2), (A) and (B) and shall include all information required thereunder.** Failure to designate experts in compliance with this order may result in the Court excluding the testimony or other evidence offered through such experts that are not disclosed pursuant to this order.

The provisions of Fed. R. Civ. P. 26(b)(4) and (5) shall apply to all discovery relating to experts and their opinions. Experts must be fully prepared to be examined on all subjects and opinions included in the designation. Failure to comply will result in the imposition of sanctions, which may include striking the expert designation and preclusion of expert testimony.

### VII. Pre-Trial Motion Schedule

All Non-Dispositive Pre-Trial Motions, including any discovery motions, shall be filed no later than November 18, 2006, and heard on or before December 1, 2006. Non-dispositive motions are heard on Fridays at 9:00 a.m., before the Honorable Dennis L. Beck, United States Magistrate Judge in Courtroom 9. **Counsel must comply with Local Rule 37-251 with respect to discovery disputes or the motion will be denied without prejudice and dropped from calendar.**

In scheduling such motions, the Magistrate Judge may grant applications for an order shortening time pursuant to Local Rule 6-142(d). However, if counsel does not obtain an order shortening time, the notice of motion *must* comply with Local Rule 37-251.

Counsel may appear and argue non-dispositive motions by telephone, providing a written request to so appear is made to the Magistrate Judge's Courtroom Clerk no later than five (5) court days before the noticed hearing date. In the event that more than one attorney requests to appear by telephone then it shall be the obligation of the moving part(ies) to arrange and originate a conference call to the court.

All Dispositive Pre-Trial Motions shall be filed no later than January 5, 2007, and heard no later than February 5, 2007, in Courtroom 2 before the Honorable Anthony W. Ishii, United States District Court Judge. In scheduling such motions, counsel shall comply with **Local Rules 78-230 and 56-260**.

### VIII. Pre-Trial Conference Date

March 9, 2007, at 8:30 a.m. in Courtroom 2 before Judge Ishii.

11

The parties are ordered to file a **Joint Pretrial Statement pursuant to Local Rule 16-281(a)(2).** The parties are further directed to submit a digital copy of their pretrial statement in Word Perfect 12[1] format, directly to Judge Ishii's chambers by email at AWIOrders@caed.uscourts.gov.

Counsels' attention is directed to **Rules 16-281 and 16-282 of the Local Rules** of Practice for the Eastern District of California, as to the obligations of counsel in preparing for the pre-trial conference. The Court will insist upon strict compliance with those rules.

## IX. Trial Date

April 24, 2007, at 9:00 a.m. in Courtroom 2 before the Honorable Anthony W. Ishii, United States District Court Judge.

    A.    This is a court trial.

    B.    Counsels' Estimate of Trial Time: 4 to 5 days.

    C.    Counsel's attention is directed to Local Rules of Practice for the Eastern District of California, Rule 16-285.

## X. Settlement Conference

Should the parties desire a settlement conference, they will jointly request one of the court, and one will be arranged. In making such request, the parties are directed to notify the court as to whether or not they desire the undersigned to conduct the settlement conference or to arrange for one before another judicial officer.

## XI. Request for Bifurcation, Appointment of Special Master, or other Techniques to Shorten Trial

Not applicable at this time.

## XII. Related Matters Pending

There are no pending related matters.

---

[1] If WordPerfect 12 is not available to the parties then the latest version of WordPerfect or any other word processing program in general use for IBM compatible personal computers is acceptable.

### XIII. Compliance with Federal Procedure

All counsel are expected to familiarize themselves with the Federal Rules of Civil Procedure and the Local Rules of Practice of the Eastern District of California, and to keep abreast of any amendments thereto. The Court must insist upon compliance with these Rules if it is to efficiently handle its increasing case load and sanctions will be imposed for failure to follow the Rules as provided in both the Federal Rules of Civil Procedure and the Local Rules of Practice for the Eastern District of California.

### XIV. Effect of this Order

The foregoing order represents the best estimate of the court and counsel as to the agenda most suitable to dispose of this case. The trial date reserved is specifically reserved for this case. If the parties determine at any time that the schedule outlined in this order cannot be met, counsel are ordered to notify the court immediately of that fact so that adjustments may be made, either by stipulation or by subsequent status conference.

Stipulations extending the deadlines contained herein will not be considered unless they are accompanied by affidavits or declarations, and where appropriate attached exhibits, which establish good cause for granting the relief requested.

Failure to comply with this order shall result in the imposition of sanctions.

IT IS SO ORDERED.

Dated:   February 7, 2006                         /s/ Dennis L. Beck
9b0hie                                     UNITED STATES MAGISTRATE JUDGE

13