**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| **DUWARD M. LANGFORD,** | ) | **CV F 05-1271 AWI DLB** |
| | ) | |
| **Plaintiff,** | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER DENYING DEFENDANTS'** |
| **v.** | ) | **MOTION FOR A TRANSFER OF** |
| | ) | **VENUE PURSUANT TO 28 U.S.C. §** |
| **AMERITANZ, INC., et al.,** | ) | **1404(a)** |
| | ) | |
| **Defendants.** | ) | (Document #13) |
| _____ | ) | |

In this removed action, Plaintiff Duward M. Langford sues Defendant Ameritanx, Inc., Defendant James Arnott, and Doe Defendants for breach of contract and other state law violations stemming from alleged agreements between Plaintiff and Defendant Arnott concerning the refurbishment and resale of surplus military compress gas cylinders ("cylinders"). The court has jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and over $75,000.00 is in controversy.

## BACKGROUND

On August 18, 2005, Plaintiff filed a complaint in the Tulare County Superior Court. The first count alleges breach of contract based on the parties' alleged agreement that Plaintiff would withdraw a bid to purchase cylinders from the government if Defendants would sell Plaintiff some of the cylinders. The second count alleges breach of contract for work performed and common counts for money owed based on the parties' alleged agreement that Plaintiff would arrange for the shipment of the cylinders. The third count alleges intentional interference with a contract and conversion based on Defendants' delivery of unusable cylinders to Plaintiff's

customer, Fire King.   The fourth count alleges breach of contract, deceit, conversion, interference with contract, and interference with prospective business advantage based on Defendants' selling of cylinders to Plaintiff's customers without paying Plaintiff the agreed commission.

On October 6, 2005, Defendants removed this action to this court because the Defendants are citizens of Ohio, Plaintiff is a citizen of California, and more than $75,000.00 is in controversy.

On October 6, 2005, Defendants filed an answer to the complaint.

On February 10, 2006, Defendants filed a motion to transfer venue pursuant to 28 U.S.C. § 1404(a) and the doctrine of *forum non conveniens*.   Defendants contend that this action could have been brought in Ohio, Ohio is a more convenient forum for the parties and witnesses, Ohio is most familiar with the governing law, it will be more cost effective to litigate in Ohio, and the prospective witnesses are Defendants' employees, who are outside the compulsory process of this court.

On March 6, 2006, Plaintiff filed an opposition.   Plaintiff contends that his choice of forum should not be disturbed.   Plaintiff argues that Defendant Arnott's act of telephoning Plaintiff in California, proposing, negotiating, and then reaching agreements over the phone provides sufficient contacts with California.   Plaintiff argues that Defendants have not shown that there exists in Ohio witnesses, voluminous documents, or physical evidence that cannot be brought to California.   Plaintiff argues that this court is more familiar with the law.   Plaintiff states that he is over 80 years old and his counsel is present in California.   Plaintiff contends that transferring this action to Ohio would merely shift the burden from Defendants to Plaintiff.

On March 20, 2006, Defendants filed a reply.   Defendants argue that Defendant Arnott made no telephone call to Plaintiff in California to create a contractual relationship.   Defendants contend that all events concerning Defendants' and Plaintiff's agreements occurred in Ohio or Virginia.

2

**LEGAL STANDARD**

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  This statute partially displaces the common law doctrine of forum non conveniens.  Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986); Miskow v. Boeing Co., 664 F.2d 205, 207, (9th Cir. 1981). The purpose of § 1404(a) is "to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  Van Dusen v. Barrack, 376 U.S. 612, 616 (1964); Kawamoto v. CB Richard Ellis, Inc., 225 F. Supp. 2d 1209, 1213 (D. Haw. 2002).  "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, cases by case consideration of convenience and fairness.'" Stewart Organization, Inc. v. RICOH Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).   A motion for transfer lies within the broad discretion of the district court, and must be determined on an individualized basis. Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000) (citing Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)).

In order to transfer a case under § 1404(a), the "defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."  Decker, 805 F.2d at 843. The district court must weigh numerous factors when deciding whether to transfer a case under Section 1404(a):

> A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case. For example, the court may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. Additionally, the presence of a forum selection clause is a "significant factor" in the court's § 1404(a) analysis . . . [and] the relevant public policy of the forum state, if any, is at least as significant a factor in the § 1404(a) balancing.

3

1   Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000); Warfield v. Gardner, 346

2   F.Supp.2d 1033, 1043 (D. Ariz. 2004).   The Northern District of California utilizes slightly

3   modified factors that include consideration of convenience to parties and witnesses, feasability of

4   consolidation of other claims, local interest in the controversy, and the court congestion of the

5   two forums.   See Williams v. Bowman, 157 F.Supp.2d 1103, 1106 (N.D. Cal. 2001).

**FACTS**

**A. Facts Alleged in the Complaint**

8       The complaint alleges that Plaintiff's and Defendant's businesses consist primarily of the

9   purchase and resale of used compress gas cylinders ("cylinders").

10      The complaint alleges that both Plaintiff and Defendants bid on a contract offered for sale

11  by the Defense Reutilization Military Organization ("DRMO") to purchase surplus cylinders

12  generated from a Richmond, Virginia military facility.   The complaint alleges that the DRMO

13  contract was to sell 15,000  ICC-1800 cylinders over the course of two years, for a total of 30,000

14  cylinders.   The DRMO contract included a term that the government could increase the quantity

15  of cylinders that the purchaser was obligated to purchase by up to 50%.    The complaint alleges

16  that Plaintiff was the first place bidder for this contract and Defendants were the second place

17  bidder.

18      The complaint alleges that Defendants offered to Plaintiff that if Plaintiff withdrew from

19  the DRMC contract bidding, Defendants would sell Plaintiff all cylinders from the DRMO

20  contract that Plaintiff needed at $20.00 per ICC-1800 cylinder.   The complaint alleges that by

21  referencing the DRMO contract in terms of the quantities of cylinders that would become

22  available, the parties intended that if Plaintiff accepted Defendants offer, Defendants would be

23  obligated to sell Plaintiff those ICC-1800 cylinders that Plaintiff requested in the normal course

24  of his business, up to a maximum of 45,000 ICC-1800 cylinders over two years.     The

25  complaint alleges that at the time of the offer, Defendants knew and understood that Plaintiff

26  possessed commitments from his downstream purchasers to purchase 1,056 ICC-1800 cylinders

27

28                                                4

at $ 30.00 per cylinder and that Plaintiff stood to earn a $10.00 per cylinder profit.   The complaint alleges that Plaintiff accepted Defendants' offer by withdrawing his bid on the DRMO contract.

The complaint alleges that Defendants have breached the agreement by failing to sell Plaintiff all of the ICC-1800 cylinders Plaintiff's business reasonably required, up to a maximum of 45,000 cylinders, at $20.00 per cylinder.   The complaint alleges that as a result of Defendants' conduct, Plaintiff has suffered lost profits.

The complaint also alleges that on or about July 22, 2004, Defendants and Plaintiff agreed that Plaintiff would record the serial numbers of and arrange for the shipment to Defendants in Ohio, a substantial number of surplus cylinders stockpiled in Richmond, Virginia for an agreed-upon price of $3.00 per cylinder.   Defendants knew that to accomplish this work, Plaintiff would have to travel from California to the military facility in Richmond, Virginia.   The complaint alleges that the parties further agreed that Defendants would pay the $3.00 per cylinder price to Plaintiff in the form of a credit against Plaintiff's purchase of cylinders from Defendants, which Defendants had agreed to sell Plaintiff at a price of $20.00 per cylinder.

The complaint alleges that Plaintiff fully performed all obligations and duties under this contract by recording the serial numbers and loading and shipping the 18,320 cylinders produced by the DRMO contracting officer.   The complaint alleges Plaintiff could not perform his obligations on the last 3,760 cylinders because Defendants refused to take them.   The complaint alleges Defendants interfered with and caused the stoppage of Plaintiff's performance of his duties.   The complaint alleges that on two occasions Plaintiff and a helper traveled from Virginia to Defendants' facility in Greenfield, Ohio, and performed a days worth of labor to clear the obstacles Defendants had placed or allowed to be placed.   The complaint alleges that on another occasion, Defendants intentionally hindered and blocked Plaintiff's performance such that Plaintiff and his helper were idle for 29 days.

The complaint alleges that Defendants have refused to pay Plaintiff money owed under

5

the terms of this contract.   The complaint alleges that Plaintiffs have suffered monetary losses,
including the cost of an air conditioner that Plaintiff purchased on Defendants' behalf.

The complaint alleges that, pursuant to the agreement obligating Plaintiff to purchase
cylinders from Defendants, Plaintiff had inspected and prepared for delivery to a downstream
customer (Fire King) a shipment of 320 cylinders.   The complaint alleges that Defendants
intentionally substituted a number of the useable 320 cylinders with unuseable cylinders and kept
the useable cylinders from themselves.   The complaint alleges that as a result, Fire Kind rejected
a number of the delivered cylinders and refused to pay part of the invoice.

The complaint alleges that during the course of performing their contractual obligations,
Defendants demanded and insisted that shipments of cylinders to Plaintiff's downstream
customers be made from Defendants' Greenfield, Ohio facility and be accompanied by purchase
orders issued directly from Defendants.   This resulted in Plaintiff divulging the identities and
contact information of his downstream customers.   The complaint alleges that Defendants have
sold cylinders to Plaintiffs' downstream customers for $30.00, and Defendants have not paid
Plaintiff his $10.00 per cylinder profit.   The complaint alleges that Defendants have essentially
stolen Plaintiff's customer list, which Plaintiff cultivated over more than twenty years in the
industry.

**B.  Defendant Arnott's Affidavits**

Defendants offer two affidavits from Defendant Arnott in support of their motion to
transfer.   Defendant Arnott's Affidavits allege that Defendant Arnott is the sole owner and
incorporator of Defendant Ameritanx, Inc.   Ameritanx Inc. is located in Greenfield, Ohio.
There are currently five employees of Ameritanx, Inc., including Steve Carroll and Corey Miller,
all of whom are residents of Ohio.

Defendant Arnott's Affidavits allege that Defendant Arnott never placed a telephone call
to Plaintiff in California regarding any offer to sell, resell, or withdraw any bids for the July 15,
2004, DRMO No. 31-4020 contract.   Defendant Arnott's Affidavits allege that Defendant

6

1   Arnott was awarded the DRMO contract on July 28, 2004, after Norm Johnson withdrew his bid.

2   Defendant Arnott's Affidavits allege that Defendant Arnott did not know Norm Johnson nor

3   about any relationship between Plaintiff and Norm Johnson.

4          Defendant Arnott's Affidavits allege that Defendant Arnott did not ask Plaintiff to travel

5   to Virginia.   Defendant Arnott's Affidavits allege that Plaintiff traveled to Virginia to inspect

6   and bid on another DRMO contract, NO-31-4021.   Both Defendant Arnott and Plaintiff placed

7   bids on this contract.

8          Defendant Arnott's Affidavits allege that Plaintiff's Memorandum Contra was signed on

9   August 9, 2004 and September 9, 2004.  The Memorandum Contra was required under

10  governmental regulation to allow Plaintiff to assist Defendants in recording the serial numbers

11  and shipping the cylinders to Ohio.

12         Defendant Arnott's Affidavits allege that on September 15, 2004, Plaintiff and Defendant

13  Arnott entered into an agreement, which was signed in Greenfield, Ohio.   Defendant Arnott's

14  Affidavits allege that this agreement allowed Plaintiff to record and ship cylinders from

15  Richmond, Virginia to Defendant's Ohio facility for the price of $2.00 per cylinder.   Defendant

16  Arnott's Affidavits allege that Plaintiff was to receive a commission of $10.00 per cylinder for

17  any sales of Defendants' cylinders made to Plaintiff's customers, which included the $2.00 per

18  cylinder recording fee.   Defendant Arnott's Affidavits allege that Plaintiff began supplying this

19  same service to Queen Cylinder Company for $2.75 per cylinder.   Defendant Arnott's Affidavits

20  allege that after Plaintiff made his arrangement with Queen Cylinder, he attempted to renegotiate

21  the terms of the agreement with Defendants and demanded more money.

22         Defendant Arnott's Affidavits allege that Steve Carroll and Cory Miller were present and

23  in the same building with Plaintiff during the five week period Plaintiff was in Ohio at the

24  Ameritanx facility.  Defendant Arnott's Affidavits allege that Steve Carroll and Cory Miller are

25  necessary witnesses to this action.   Defendant Arnott's Affidavits allege that Defendants still

26  have several hundred cylinders in the Ohio facility that were part of DRMO bid No. 31-4020.

27

28                                                    7

1  Defendant Arnott's Affidavits allege that the allegedly faulty cylinders sent to Fire King were

2  from DRMO bid No. 31-4020.

3  **C.  Plaintiff's Affidavit**

4        Plaintiff offers the Affidavit of Plaintiff in opposition to the motion to transfer.

5  Plaintiff's Affidavit alleges that Norm Johnson is well-known in the industry to bid for resale to

6  Plaintiff.   Plaintiff's Affidavit alleges that Norm Johnson made the high bid on DRMO No. 31-

7  4020.  Plaintiff's Affidavit alleges that  Defendant Arnott called Plaintiff at his office in

8  California, regarding Norm Johnson's bid.  Plaintiff's Affidavit alleges that Defendant Arnott

9  made plain during the conversation that he knew Norm Johnson's first place bid was made

10  anticipating a re-sale to Plaintiff.   Plaintiff's Affidavit alleges that during this call, Defendant

11  Arnott proposed that if Plaintiff had the high bid withdrawn, Defendant Arnott would sell

12  Plaintiff all the cylinders Plaintiff could use.   Plaintiff's Affidavit alleges that they agreed over

13  the phone.   Plaintiff's Affidavit alleges that once they agreed, Defendant Arnott gave Plaintiff

14  his authority to act as Defendants' agent at the Richmond, Virginia facility.    Plaintiff's Affidavit

15  alleges that Plaintiff did not embark from California for Richmond, Virgina until he knew that he

16  and Defendant Arnott had an agreement.

17        Plaintiff's Affidavit alleges that Plaintiff only went to Defendants' Ohio facility after

18  Plaintiff and his helper had shipped lots of cylinders to Ohio.  Plaintiff's Affidavit alleges that

19  Plaintiff went there when Defendant Arnott stopped Plaintiff's performance because Defendants

20  could not handle any more of the cylinders.

21        Plaintiff's Affidavit alleges that Plaintiff had commitments from some of his downstream

22  buyers to purchase 4,480 cylinders before Plaintiff left California.[1]   Plaintiff's Affidavit alleges

23  that Defendant Arnott arranged it so that Defendant Arnott billed Plaintiff's customers directly

24  on Defendant Arnott's invoices, and the customers paid Plaintiff directly, through his California

25

26        [1]  Plaintiff's Affidavit in this respect is inconsistent with the complaint.   The complaint

27  alleges Plaintiff only had buyers to purchase 1,056 cylinders.

28                                                    8

bank.

Plaintiff's Affidavit alleges that none of the faulty cylinders that Defendant Arnott substituted into the shipment to Fire King remain in Ohio.   Plaintiff's Affidavit alleges that they were all shipped to Fire King in Seattle, Washington.

Plaintiff's Affidavit alleges that Steve and Cory were never present when Defendant Arnott and Plaintiff had any conversation about the terms of their agreements.   Plaintiff's Affidavit alleges that Plaintiff did not discuss the terms of the agreement with Steve or Cory.

Plaintiff's Affidavit alleges that Plaintiff is 86 years old.   Plaintiff is an insulin-dependent diabetic, had heart bypass surgery in late 2002, and has other health problems.   Plaintiff's Affidavit alleges that traveling long distances is not easy for Plaintiff.   Plaintiff's Affidavit alleges that Norm Johnson lives and works in Auburn, California.   Plaintiff's Affidavit alleges that Norm Johnson has bad asthma and cannot fly.

## DISCUSSION

Defendants contend that this action should be transferred to Ohio pursuant to 28 U.S.C. § 1404(a).   Defendants contend that this action should have been brought in Ohio, and all factors indicate that Ohio is the better forum.

**A. Where the Suit Might Have Been Brought**

Transfer under 28 U.S.C. § 1404(a) is limited to courts where the action "might have been brought."   The moving party must demonstrate that the proposed transferee court would have subject matter jurisdiction, personal jurisdiction, and would be a proper venue for the action.   Hoffman, 363 U.S. at 343-44.   Defendants are located in Ohio.   As such, the United States District Court for the Southern District of Ohio would have personal jurisdiction and venue over Defendants. See 28 U.S.C. § 1391(c) (providing venue is proper in "a judicial district where any defendant resides, if all defendants reside in the same State.").   Just as this court has diversity subject matter jurisdiction over this action, the United States District Court for the Southern District of Ohio would have subject matter jurisdiction over this action.   Thus, this

1    action could have been brought in the United States District Court for the Southern District of

2    Ohio.

3    **B. Factors Regarding Transfer**

4            The court should adjudicate motions for transfer according to an individualized,

5    case-by-case consideration of convenience and fairness.  <u>Jones</u>, 211 F.3d at 498.   The defendant

6    "must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of

7    forum."  <u>Decker</u>, 805 F.2d at 843.    The moving party bears the burden of establishing that the

8    balance of conveniences favors transfer.  <u>Commodity Futures Trading Comm'n v. Savage</u>, 611

9    F.2d 270, 279 (9th Cir. 1979).   As discussed above, there are numerous factors the court should

10   consider when deciding whether to transfer pursuant to Section 1404(a).

11   *<u>1.  The location where the relevant agreements were negotiated and executed</u>*

12           The parties dispute where the relevant agreements were negotiated, where the relevant

13   agreements were executed, and what the agreements were for.    According to Plaintiff's facts, all

14   agreements at issue in this action were made over then phone, when Plaintiff was in California

15   and Defendant Arnott was presumably in Ohio.   According to Plaintiff, over the phone, Plaintiff

16   and Defendant Arnott agreed: (1) Plaintiff would have Norm Johnson withdraw his bid on 31-

17   4020; (2) Defendant Arnott would then sell Plaintiff any cylinders he needed from 31-4020 at

18   $20.00 per cylinder; and (3) Plaintiff would go to Virginia and prepare the cylinders and send

19   them to Defendants in Ohio and Defendant would pay Plaintiff $3.00 per cylinder for this

20   service.   Defendants offer evidence that the agreements concerning Defendants giving Plaintiff

21   a commission for sales and Plaintiff recording and shipping the cylinders to Ohio were negotiated

22   in Virginia, and executed in Virginia and Ohio.   As for the agreement concerning Plaintiff

23   preparing and sending the cylinders, Defendants claim that they agreed to pay Plaintiff $2.00 per

24   cylinder, and the $10.00 commission Plaintiff would make on sales to his customers included the

25   $2.00 recoding and shipping fee.   Defendants claim Defendant Arnott never called Plaintiff in

26   California and never asked Plaintiff to have Norm Johnson withdraw his high bid.

27

28                                                          10

Defendants have the burden of showing that Ohio is a more appropriate forum for this action than California.  See Jones, 211 F.3d at 499.   Defendants have not shown that Ohio is a more appropriate forum because the relevant agreements were negotiated and executed in Ohio. This action is premised on agreements Plaintiff claims were made over the phone, when Plaintiff was in California.   Defendants provide no evidence that the agreements discussed in the complaint were made in Ohio.  Rather, Defendants' evidence shows that the agreements underlying this action were never made.   Defendants' evidence is that any agreements between the parties were reached in Virginia and Ohio and they were for different terms than those set forth in the complaint and Plaintiff's affidavit.   Thus, Defendants have not shown that Ohio is a more appropriate forum for this action because the agreements underlying this action were negotiated and executed in Ohio.  To the contrary, Defendants' evidence shows that there is no appropriate forum for this action because the agreements underlying this action were never made. Thus, the court cannot find that Defendants' evidence shows Ohio is a more appropriate forum based on where the agreements underlying this action were negotiated and executed.

## 2. The state that is most familiar with the governing law

Plaintiff's complaint alleges numerous counts based on California law.  There are no counts based on Ohio law or federal law in this action.   Defendants have argued generally that Ohio law should govern, but have again explained this contention based on Defendants' version of events, alleging that no phone call was ever made to California.   Defendants have not shown that Ohio law should govern the agreements alleged in the complaint, as opposed to the agreements Defendants' contend the parties had.   As this court sits in California, the Eastern District is more familiar with the California law alleged in the complaint.  This factor weighs against transfer.

## 3. The plaintiff's choice of forum

The third factor weighs in favor of Plaintiff because Plaintiff chose a California forum and resides in the Eastern District of California.  This factor is generally given significant weight

11

1    when the plaintiff resides in the chosen forum.   Warfield v. Gardner, 346 F.Supp.2d 1033, 1044

2    (D.Ariz. 2004); Williams v. Bowman, 157 F.Supp.2d 1103, 1006 (N.D.Cal.  2001).  Because

3    Plaintiff resides in the Eastern District of California, this factor weighs against transfer.

4          Defendants do point out that Plaintiff did not choose this forum.  Rather, Plaintiff chose

5    the Tulare County Superior Court, and this action is currently in this court because Defendants

6    removed the action.   While Plaintiff did not choose this court to adjudicate this action, Plaintiff

7    did choose a California state court lying in this judicial district, and Plaintiff has indicated a

8    strong desire to litigate this action in this court.    Because there is no indication that Plaintiff's

9    choice of forum was a result of forum shopping, see Williams, 157 F.Supp.2d at 1006, the court

10   still finds that this factor weighs against transfer.

11   ***4. The respective parties' contacts with the forum***

12          The fourth factor is not entirely clear.  Obviously, Plaintiff has substantial contacts with

13   California.   Plaintiff lives in California and appears to run his purchase and resale business from

14   California.  What is unclear are the precise contacts of Defendants.   Defendants offer no

15   evidence regarding their contacts with California, other than to deny the phone calls during

16   which the agreements underlying this action were allegedly made.   Plaintiff's complaint alleges

17   that Defendants have maintained close, systematic, and regular business related contracts with

18   California since 1998, when Defendants began purchasing cylinders from Plaintiff.   Plaintiff's

19   complaint alleges that Defendant Arnott has traveled to Plaintiff's Barstow facility, and while in

20   California, Defendants purchased large quantities of cylinders from California.   Plaintiff's

21   complaint also alleges that Defendants have a steady stream of customers in California, and

22   Defendants have shipped their product to customers in California.  In summary, Plaintiff's

23   complaint indicates that Defendants have had contact with California in their business.

24   However, these contacts do not appear to be substantial.  Absent evidence from Defendants

25   showing no contacts with California, this factor does not greatly weigh for or against transfer, but

26   does tilt toward a California forum.

27

28                                          12

*5.   The contacts relating to the plaintiff's counts in the chosen forum*

As with the first factor, the parties dispute whether there were contacts with California regarding the parties' agreements.   Defendants deny any phone call to California and contend that any representations and agreements occurred in Virginia and Ohio.   Plaintiff provides evidence that the agreements at issue in the complaint were made over the phone, when Defendant Arnott placed a phone call to Plaintiff in California.   It is Defendants' burden to show inconvenience under Section 1404(a).  However, as with the first factor, Defendants have only provided evidence that the agreements alleged in the complaint were never made.   Such evidence does not weigh in favor of transferring this case to Ohio; If true, this evidence simply supports an ultimate judgment in Defendants' favor.

*6.   The differences in the costs of litigation in the two forums/Relative court congestion*

The sixth factor is unknown as no dollar amounts, economic data, or court data have been provided.  Furthermore, no party has expressly addressed this factor.  Because there is no argument made or evidence provided, it is a neutral factor.

*7.   The availability of compulsory process to compel attendance of unwilling non-party witnesses/Convenience of Witnesses*

Live testimony is a primary reason courts are concerned about the convenience of witnesses. Sackett v. Denver & R.G.W.R. Co., 603 F.Supp. 260, 262 (D.Colo.1985). A court will therefore favor a forum where non-party witnesses will fall under the court's subpoena power. Commercial Solvents Corp. v. Liberty Mut. Ins. Co., 371 F.Supp. 247, 250 (S.D.N.Y.1974). Any witnesses who reside in the Southern District of Ohio can be compelled to attend trial in the Southern District of Ohio court.  Any witnesses who reside in the Eastern District of California can be compelled to attend trial in this court.  In his affidavit, Plaintiff indicates that he does not believe Defendants' employees will have relevant information, and Plaintiff implies that he does not intend to subpoena Defendants' employees.   Plaintiff does not indicate what witnesses would be unavailable to Plaintiff in Ohio.   Plaintiff has not shown that, other than Norm

13

Johnson, his witnesses would be unable or unwilling to travel to Ohio to voluntarily to testify.
While Plaintiff has shown Norm Johnson will not travel, Norm Johnson's proposed testimony
has not been disclosed and it is unclear whether the parties could not make other arrangements to
preserve his testimony.   In their evidence, Defendants imply that Steve Carroll and Cory Miller,
Defendants' Ohio employees, may be relevant witnesses.

    This factor does not greatly weigh in favor or against transfer.   While Defendants
mention Steve Carroll and Cory Miller as possible witnesses, Defendants have not informed the
court what their testimony will be, why their testimony is relevant, and that they will be
unavailable without a subpoena.   See A.J. Industries, Inc. v. United States Dist. Ct., 503 F.2d
384, 389 (9th Cir.1974); Florens Container v. Cho Yang Shipping, 245 F.Supp.2d 1086, 1092-93
(N.D. Cal. 2002); Williams, 157 F.Supp.2d at 1108.   Without a more persuasive account,
Defendants, as the parties with the burden of proof, fail to establish that the convenience of the
witnesses factor weighs in favor of litigation in Ohio.   Further, it appears that the Ohio witnesses
are also Defendants' employees.   There is not a showing that Defendants would be unable to
have them testify in California on Defendants' behalf.    In this case, no party has provided
sufficient information regarding any proposed witness's testimony and unwillingness to
voluntarily appear that requires transfer to another jurisdiction so that the witness can be
subpoenaed.   As such, this factor is neutral or tilts in favor of the current forum.

**8.  *The ease of access to sources of proof***

    The eighth factor tilts in favor of Ohio.  Evidence appears to come from Ohio, California,
Virginia, and Washington state.   Maintaining suit in one district will cause some of the same
problems as maintaining it in another district.  Defendants' records are in Ohio.  Plaintiff's
records are presumably in California.  Other records may be in Virginia.   The defective
cylinders most likely are in Washington.   Cylinders from the same lot as the defective cylinders
are in Ohio.   In total, there is probably more physical evidence in Ohio than any other one
location because Defendants' facility is in Ohio, the cylinders were refurbished in Ohio,

1    Defendants' records are in Ohio, and remaining cylinders may be in Ohio.

2           The party seeking a transfer cannot rely on vague generalizations as to the convenience

3    factors. The moving party is obligated to identify the key witnesses and evidence and provide a

4    statement why the witnesses and evidence are necessary.    See Heller Financial, Inc. v. Midwhey

5    Powder Co., 883 F.2d 1286, 1293 (7th Cir. 1989).   Defendants have not provided sufficient proof

6    that they will be prejudiced if they are required to produce their evidence in California.   This is a

7    breach of contract action.   The contracts and any written manifestations of the parties'

8    agreements do not appear to voluminous.   Defendants have neither provided a list of specific

9    physical evidence that they need to maintain their defense nor shown that it would be difficult to

10   transport it to California.   In the event Plaintiff demands considerable discovery from

11   Defendants that is found in Ohio, the court is confident that the parties and the assigned

12   Magistrate Judge can fashion a solution in which Defendants do not bear the entire burden of

13   mailing and transportation.   While this factor does indicate Ohio is a better forum, it simply is

14   not strong enough to trump the factors against transfer.

15   *9.  Convenience of the parties*

16          This factor does not help either side.  The competing forums, the Eastern District of

17   California and the Southern District of Ohio, are thousands of miles apart.  For Defendants, it is

18   obviously more convenient to litigate in Ohio, and for the Plaintiff, California.  This is a neutral

19   consideration.

20          Plaintiff complains that he does not have counsel in Ohio.   Defendants respond that their

21   counsel is inconvenienced by litigating this action in California, and Defendants' counsel had to

22   seek admission to this court pro hoc vice.   The word "counsel" is not found in Section 1404(a),

23   and the convenience of counsel is irrelevant and not a factor to be assessed in determining

24   whether to transfer a case under Section 1404(a).   In re Volkswagen AG, 371 F.3d 201, 206 (5th

25   Cir. 2004); Solomon v. Continental Am. Life Ins Co., 472 F.2d 1043, 1047 (3rd Cir. 1973);

26   Bunker v. Union Pacific Railroad Co., 2006 WL 193856, *2  (N.D.Cal. 2006).   This argument

27

28                                                15

1  will be given no weight.

2  ***10.  Forum Selection Clause***

3        No one has argued a forum selection clause and there is no such clause in the documents

4  provided by the parties.  This is a neutral consideration.

5  ***11.  Public Policy Considerations Of The Forums/Local Interest In The Controversy***

6        No party has cited authority why California or Ohio have a greater interest in regulating

7  the conduct of agreements allegedly made over the phone, which resulted in performance in at

8  least four different states.  Neither party adequately addresses this factor.  Accordingly, this is a

9  neutral factor.

10  ***13.  Conclusion***

11        From the evidence submitted, it is clear that the parties dispute the terms of the

12  agreements between them.   The parties also dispute when and where the agreements were

13  entered into.   This action alleges breaches of agreements that Plaintiff maintains were entered

14  into when Defendant contacted Plaintiff in California over the phone.   While disputing the

15  existence of these telephone agreements, Defendants have not offered sufficient argument or

16  evidence that a better place to litigate whether Defendants' breached these agreements and

17  address Defendants' defense that there are no agreements is Ohio rather than California.

18  Defendants evidence, if taken as true, provides support for a finding that the agreements alleged

19  in the complaint did not occur and that this action should not be brought in any forum.

20  Defendants have not met their burden of proof to show that Ohio is a better forum.

21        The Jones factors set considerations for the court in order to determine whether transfer

22  is proper under § 1404(a).   As applied to this case, a number of factors are neutral.   Except for

23  one factor, all other factors tilt toward a California forum.   The one factor tilting toward an Ohio

24  forum is the fact more physical evidence appears to be in Ohio than any other potential forum.

25  However, Defendants have not specifically listed the physical evidence they believe is necessary

26  in their moving papers, and Defendants have not shown that it would be overly burdensome to

27

28

present this evidence at trial in California.    It is Defendants' burden to make a "strong showing" that transfer should be ordered.  See Jones, 211 F.3d at 499; Decker, 805 F.2d at 843; Warfield, 346 F.Supp.2d at 1044; Robinson Corp., 304 F.Supp.2d at 1243; Williams, 157 F.Supp.2d at 1106.  Defendants have provided insufficient evidence and have not met their burden for the court to order a transfer under Section 1404(a).

## C.  Forum Non-Conveyance

In their motion, Defendants also request transfer under the doctrine of *forum non conveniens.*   Section1404(a) partially displaces the common law doctrine of forum non conveniens.  Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986); Miskow v. Boeing Co., 664 F.2d 205, 207 (9th Cir. 1981).   For the same reasons why transfer is not appropriate pursuant to Section 1404(a), the court finds that transfer under the doctrine of *forum non conveniens* is also not appropriate.

**ORDER**

Accordingly, based on the above memorandum opinion, the court ORDERS that Defendants' motion to transfer venue for convenience under 28 U.S.C. § 1404(a) and the doctrine of *forum non conveniens* is DENIED.


IT IS SO ORDERED.

**Dated:    May 12, 2006** _____       _____ /s/ Anthony W. Ishii_____
0m8i78                                    UNITED STATES DISTRICT JUDGE